UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ROSS MACLIN #148084,

                Plaintiff,          Civil Action No.: 12-12480

                                   Honorable Gershwin A. Drain

v.                               Magistrate Judge Elizabeth A. Stafford

KELLY HOLDEN, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS MOTION FOR SUMMARY JUDGMENT [R. 60]

## I.    INTRODUCTION

In their December 1, 2014 Motion for Summary Judgment,

Defendants Kelly Holden and Richard Cady argue that Plaintiff Ross Maclin

cannot establish the elements of a First Amendment retaliation claim, and

that they are entitled to qualified immunity.  The Court **RECOMMENDS** that

the motion be **DENIED**.

## II.    ANALYSIS

### A. Retaliation Claim Against Holden

The genesis of Maclin's retaliation claim involves the confiscation of a

word processor-style typewriter on June 15, 2011, by Holden, then

Assistant Resident Unit Manager (ARUM) of Cotton Correctional Facility

(JCS) in Jackson, Michigan.  Maclin claims that he sent complaints and

threatened to file a grievance against ARUM Holden because she refused his request for ink cartridges.  He alleges that, in retaliation, she confiscated his typewriter, deeming it contraband, and issued a Notice of Intent (NOI) to Conduct an Administrate Hearing ticket.  As the Resident Unit Manager (RUM), Cady held the administrative hearing on June 22, 2011, upheld the ticket and determined that the typewriter was contraband.

Maclin filed a complaint with this Court on June 7, 2012.  ARUM Holden's first responsive pleading was a motion for summary judgment in which she made the same arguments she raises here.  [R. 15; R. 26; R. 29].  In his report and recommendation (R&R), Magistrate Judge Mark A. Randon thoroughly detailed the factual background; determined that Maclin's claims raised questions of fact to support each element of a First Amendment retaliation claim, including the question of whether the typewriter was his property or whether it was contraband; and found that ARUM Holden should not receive qualified immunity.  [R. 26, PgID 281-94]. On August 27, 2013, United States District Judge Gershwin A. Drain upheld these portions of Judge Randon's R&R, and denied ARUM Holden's motion for summary judgment.  [R. 29, PgID 306, 309].

Maclin argues that the law-of-the-case doctrine should be invoked to bar reconsideration of the earlier denial of ARUM Holden's motion for

summary judgment.  That doctrine does not rigidly bar reconsideration of an earlier decision by the same or a coordinate court.  *United States v. Dunbar*, 357 F.3d 582, 592-93 (6th Cir. 2004).  But, the discretion to revisit earlier rulings should be "'exercised very sparingly, and only under extraordinary conditions.'"  *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 678, 677 (6th Cir. 2002) (*quoting Gen. Am. Life Ins. Co. v. Anderson*, 156 F.2d 615, 619 (6th Cir. 1946)).  The extraordinary conditions that warrant reconsideration are: (1) newly discovered evidence bears on the question; (2) there has been a material change in controlling law; (3) the earlier decision was clearly erroneous and would cause a manifest injustice.  *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).

Here, ARUM Holden does not cite newly discovered evidence as justifying a reconsideration of the earlier order.  She instead relies upon a November 21, 2012, Order and Opinion from the Ingham County Circuit Court holding that RUM Cady's determination that the typewriter was contraband was supported by substantial evidence.  (R. 60-3, PgID 469-71].  ARUM Holden argues that, in light of that order, variations of issue preclusion that have been applied to prisoner claims require this Court to find that the typewriter was contraband and that Maclin's retaliation claim is unsustainable.  ARUM Holden cites the holding of *Peterson v. Johnson*,

3

714 F.3d 905, 908 (6th Cir. 2013), that courts reviewing claims under 42 U.S.C. § 1983 must give preclusive effect to factual findings that were essential to a Michigan major misconduct hearing judgment.  Additionally, ARUM Holden relies upon unpublished Sixth Circuit cases holding that "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'"  *See Burton v. Rowley*, 234 F.3d 1267, *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994)).[1]  *Peterson* was decided in April 2013, before the R&R, and the checkmate doctrine has been cited by the Sixth Circuit since 1997,[2] so these decisions do not represent a material change in the controlling law.

Thus, reconsideration of the earlier denial of ARUM Holden's motion for summary judgment is warranted only if that decision was clearly erroneous and would cause a manifest injustice.  To address this question, the Court has considered whether ARUM Holden waived her argument that preclusion applies, and whether the preclusion theories should be applied to this case.  For the reasons stated below, the Court finds that ARUM

---

[1] *See also Annabel v. Frost*, No. 14-10244, 2015 WL 1322306, at *5 (E.D. Mich. Feb. 17, 2015) report and recommendation adopted, No. 14-10244, 2015 WL 1510680 (E.D. Mich. Mar. 30, 2015) (noting that the checkmate doctrine has been involved in sixteen unpublished Sixth Circuit opinions).
[2] *See Annabel*, 2015 WL 1322306 at *5.

4

Holden has not waived her preclusion defense, but that the preclusion theories she relies upon should not be applied to this case.

### 1. Waiver

Maclin argues that ARUM Holden waited too long to raise issue preclusion. The Court disagrees. Although affirmative defenses may be waived if not timely raised, a litigant has not waited too long to invoke a preclusion defense unless the parties have in fact already re-litigated the relevant claim. *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005). Here, ARUM Holden did not raise issue preclusion in her motion for summary judgment, but she did assert in her September 18, 2013 answer that Maclin's claims "may be barred by release, *res judicata*, or collateral estoppel." [R. 36, PgID 331]. After invoking these defenses, the initial discovery cutoff of December 20, 2013 was extended by stipulation until November 14, 2014, the parties were deposed and interrogatories were exchanged. [R. 31; R. 49; R. 57; R. 60-11; R. 62-2, PgID 541, 548]. Thus, the parties had not already re-litigated the contraband issue when ARUM Holden invoked her preclusion defenses, and waiver should not apply.

### 2. Preclusion Under *Peterson v. Johnson*

ARUM Holden's claim that the holding of *Peterson* applies should be rejected. *Peterson* held that factual determinations from Michigan major

5

misconduct prison hearings should be given preclusive effect because the hearings are conducted by a state administrative agency acting in a "judicial capacity." *Peterson*, 714 F.3d at 912-13, (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)).  Michigan prisons are acting in a judicial capacity when holding major misconduct hearing because, among other features, the "presiding hearing officer" must be an attorney who is impartial, and who must abstain from *ex parte* communications with the accused prisoner and the accusing prison staff. *Id*. at 912 (citing Mich. Comp. Laws §§ 791.251(6), 791.252(i), (j)).

ARUM Holden's reliance on *Peterson* is misplaced because, as she concedes, RUM Cady was not a "presiding hearing officer" as described in that opinion.  [R. 70, PgID 645].   Resident unit managers like Cady do not have a function that is classically adjudicatory because they do "not possess the independence ascribed to members of the judiciary." *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).

> They are employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decision. They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment. The credibility determination they make often is one between a co-worker and an inmate. They thus are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee. It is the old situational problem of the relationship between the keeper and the kept, a relationship that hardly is conducive to a truly adjudicatory performance.

6

*Cleavinger v. Saxner*, 474 U.S. 193, 204 (1985) (citation omitted).  For this reason, employees like RUM Cady are not afforded absolute judicial immunity, in contrast to the attorneys who serve as hearing officers in a manner that is wholly independent of the warden.  *Id.* at 204-05; *Shelly*, 849 F.2d at 230.

ARUM Holden attempts to brush aside the fact that the contraband hearing was not presided over by an independent hearing officer, emphasizing that RUM Cady's decision received judicial review in the state Circuit Court.  [R. 70, PgID 645].  However, the *Peterson* decision was premised in significant part on the "judicial-type protections" of the *administrative hearing itself*, and the protection of an independent presiding hearing officer was of paramount concern.  *See Peterson*, 714 F.3d at 912. Thus, the holding of *Peterson* should be found inapplicable to this case.

### 3. Checkmate Doctrine

As noted, the Sixth Circuit has held in unpublished opinions that "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'"  *Burton*, 234 F.3d at *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v. Baird*, 29 F.3d at 469). However, a court in this district disputed the notion that the checkmate doctrine is well settled in the Sixth Circuit, and warned against uncritical

7

application of the doctrine.  "[T]o allow retaliatory discipline claims only where prison disciplinary proceedings terminated in plaintiff's favor 'would unfairly tempt corrections officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims.'" *Wagner v. Randall*, No. 13-15075, 2014 WL 4843686, at \*3 (E.D. Mich. Sept. 29, 2014) (Tarnow, J) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164– 65 (5th Cir.1995)).

As evidence that the checkmate doctrine is not absolute, the *Wagner* court cited *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), an opinion that is instructive to the instant case.  In that case, Thomas alleged that corrections officer Eby had written a major misconduct ticket against him, alleging that he exposed his genitals, in retaliation for a grievance Thomas had written against another corrections officer.  *Id.* at 436.  A hearing officer upheld the ticket, and Thomas's subsequent appeals were unsuccessful. *Id.*

Thomas's complaint alleged First Amendment retaliation, but the defense argued "that because the administrative process concluded that Eby's allegations were not false, Thomas cannot show a retaliatory motive." *Id.* at 441.  Nonetheless, the Sixth Circuit held that dismissal of the plaintiff's complaint at the pleading stage was in error because, after

8

discovery, Thomas may have been able to establish that retaliation was a

motivating factor for the misconduct ticket.

> For example, it is possible that after discovery, Thomas would
> be able to demonstrate that inmates regularly expose their
> genitals to guards without consequence. Or perhaps he could
> prove that he had exposed himself to Eby in the past, but she
> had never pursued disciplinary action until after he filed a
> grievance against another guard. In either of these cases,
> Thomas would be able to show that his filing a grievance was 'a
> motivating factor' behind the misconduct ticket.

*Id.* at 442.

While the *Thomas* court postulated about the type of evidence

that might be discovered, there is no need to speculate in this case.

Maclin has adduced evidence, including the statements of two

witnesses, that he was using the typewriter openly in a day room; that

ARUM Holden did not confiscate his typewriter until he threatened to

file a grievance against her; and that she told him that she was

confiscating the typewriter because of the grievances. [R. 1, PgID 26-

30; R. 20, PgID 235].

Unlike the unpublished opinions upon which Holden relies,

*Thomas* is published and is therefore binding precedent. *Grundy*

*Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003) (published

opinions binding); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828,

833 (6th Cir. 2000) (unpublished opinions not binding).  In light of the

9

holding of *Thomas* that other evidence might prove retaliatory motive despite the administrative proceeding concluding in the defendant's favor, and given the evidence of retaliatory motive presented by Maclin, the factual findings of the administrative hearing should not be found to checkmate Maclin's claim against ARUM Holden.

### B. Retaliation Claims Against RUM Cady

RUM Cady moves for summary judgment of Maclin's claims against him. Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine

10

where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). The opposing party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. *Fed. R. Civ. P. 56(c)(3)*. The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

11

The determination of whether Maclin's retaliation claims against RUM Cady survive the instant motion requires a two-fold inquiry: (1) whether there is sufficient evidence that RUM Cady did what is alleged; and (2) if so, whether those actions support an actionable retaliation claim.  The Court will address these inquiries in turn.

### 1. Factual Issues

A reasonable jury could find that Maclin's factual allegations regarding RUM Cady's alleged retaliation are credible.[3]

On July 15, 2013, Maclin filed a Notice of Retaliation and Harassment by Defendant Cady, which Judge Drain accepted as a supplement to Maclin's complaint.  [R. 27; R. 29, PgID 307-08].  In the Notice, Maclin claimed that, on July 8, 2013, RUM Cady threatened to transfer him out of his housing unit because he (Maclin) had filed another grievance against a staff member.  Maclin says that he was transferred from unit F to unit A the same day.  [R. 27, PgID 298].  Maclin reiterates these allegations by affidavit.  [R. 62-2, PgID 544].  RUM Cady has provided different responses to these allegations.  He denied in April 2014 recalling who initiated this

---

[3] In their motion for summary judgment, Defendants argue as if the notices of retaliation against RUM Cady include claims against ARUM Holden. They do not, so this Court's discussion of those claims will refer to RUM Cady, only.

transfer or for the reason for it, but he acknowledged on September 27, 2013, that he initiated the transfer and stated that it was due to complaints that Maclin was harassing weaker inmates.  [R. 62-2, PgID 549-51, 554-55].

Maclin's allegation regarding RUM Cady's statement on June 8, 2013, that he was transferring Maclin because of the grievances is competent evidence in opposition to RUM Cady's motion for summary judgment.  It is true that the Court cannot consider inadmissible hearsay.  *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).  However, Maclin's representations of RUM Cady's statements are not hearsay.  "[A] statement is not hearsay if the statement is offered against a party and is 'the party's own statement in either an individual or representative capacity.'"  *Jewell v. CSX Transp., Inc.*, 135 F.3d 361, 365 (6th Cir. 1998) (quoting Fed. R. Evid. § 801(d)(2)(A)).

Maclin's July 15, 2013 notice also alleged that, on July 9, 2013, Officer Kiser confiscated his television set, headphones, a radio/Walkman tape player and clothing and stated, "Didn't Cady tell your black ass to stop writing grievances on staff."  [R. 27, PgID 298-99].  In an affidavit, Maclin alleges that Officer Kiser said that RUM

13

Cady instructed him to conduct the shake-down because of Maclin's grievances. [R. 62-2, PgID 544].  Contrary to RUM Cady's argument otherwise, the Court finds that Officer Kiser's statement constitutes an admission by an agent of RUM Cady, which is not hearsay and may be construed against Cady under § 801(d)(2)(D).  *See Deal v. Polk Cnty., Tennessee*, No. 103-CV-385, 2007 WL 1387918, at *11 (E.D. Tenn. May 8, 2007) ("Deputy Browne's statements may be construed as admissions by an agent or servant because Burris supervised Browne.")

In a separate Notice of Retaliation by Defendant Cady that has been treated as a supplement,[4] Maclin alleged that RUM Cady approached him on September 4, 2013, and said, "Didn't I tell you that I was going to get your black ass transferred for filing that fucking lawsuit against me. . . . I told you that I was going to transfer your ass before I retire, and I'm having your black ass packed up for transferred [sic] tonight." [R. 33, PgID 318].  The following day, Maclin was transferred to Chippewa Correctional Facility (URF), which is in the Upper Pennisula of the state. [R. 60, PgID 411, 420]. RUM Cady denies this allegation.  He states that he had nothing to

---

[4] Magistrate Judge Randon ordered RUM Cady to respond to this notice. [R. 34].

do with the transfer and points to the transfer order's indication that the move was to make room for an incoming prisoner who needed parole placement.  [R. 60-4, PgID 473; R. 62-2, PgID 554-55].

A jury may find RUM Cady's representations to be credible. However, Maclin's allegation that Cady told him that he orchestrated the transfer is admissible as an admission pursuant to Section 801(d)(2)(A).  The jury may also consider the fact that, in his initial complaint, Maclin alleged that he was threatened by both ARUM Holden and RUM Cady that he would be transferred from JCS due to his grievances, with Holden specifying that he would be transferred "up north." [R. 1, PgID 7-8, 13, 30, 53].  Additionally, in his July 2013 Notice, Maclin claimed that Officer Kiser threatened that Maclin would be transferred "up north" to deprive him of visits.  [R. 27, PgID at 299].  A jury may find that Maclin's earlier allegations that these threats were made lends credibility to his representation that RUM Cady transferred him "up north" out of retaliation.[5]

### 2.  Actionable Retaliation

In order to survive summary judgment, Maclin's aforementioned

---

[5] Incidentally, in *Siggers-El v. Barlow*, 412 F.3d 693, 698 (6th Cir. 2005), an assistant deputy warden testified that, except when a transfer is made pursuant to a prisoner's request, "it is the RUMs who select which inmates to transfer."

evidence must support a finding that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Defendant Cady does not challenge the first element, nor could he.  It is well settled that filing grievances and lawsuits against prison officials is protected by the First Amendment.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

Taken individually, Maclin's complaint that he was transferred from unit F to the unit A, which he claims was "less desirable," [R. 62-1, PgID 527], is not an actionable adverse action because he does not allege that he faced any significant foreseeable consequences.  "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).  Thus, a prison transfer constitutes an adverse action only when it causes foreseeable consequences that would inhibit the prisoner from exercising constitutional rights.  *Id.* at 701.  A transfer to a less desirable unit, alone, is insufficient.

16

4:12-cv-12480-GAD-EAS   Doc # 71   Filed 06/24/15   Pg 17 of 20   Pg ID 669

Maclin's claim regarding the alleged confiscation of his property in the shakedown stands on firmer ground "[b]ecause deprivation of personal . . . property can be considered an adverse action." *Clark v. Johnston*, 413 F. App'x 804, 815 (6th Cir. 2011). Similarly, Maclin's transfer to URF could constitute an actionable adverse action because he alleges that it cost him a high-paying job and created an obstacle for family visits. [R. 62-1, PgID 528]. *See Siggers-El,* 412 F.3d at 701-02 (adverse action when transfer caused prisoner loss of high-paying job); *Pasley v. Conerly*, 345 Fed.Appx. 981, 985 (6th Cir. 2009) (adverse action when threatened transfer cause loss of high-paying job and family would not be able to visit).

Further, even if individual actions are not individually considered adverse actions, they may be when considered in the aggregate. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010). Taken together, Maclin portrays a course of conduct by RUM Cady between July and September 2013 that would deter a person of ordinary firmness from continuing to file grievances or lawsuits.

Moreover, there is sufficient evidence for a jury to find that RUM Cady's alleged conduct was motivated by Maclin's grievances and lawsuits. That evidence includes the above referenced admissions and the temporal proximity of the protected conduct and the alleged adverse actions. Where

17

an adverse action occurs very close in time after the protected activity, "such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

For these reasons, the Court finds that there are genuine disputes of material fact, and summary judgment of Maclin's retaliations claims against RUM Cady should be denied.

### C. Qualified Immunity

Both ARUM Holden and RUM Cady invoke qualified immunity in their motion for summary judgment.  However, Judge Randon already held that Holden is not entitled to qualified immunity, and law-of-the-case applies.

RUM Cady is not entitled to qualified immunity either.  Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).  As set forth above, a reasonable juror could find that Cady violated Maclin's constitutional rights.  Furthermore, it is clearly established that prisoners

18

enjoy a First Amendment right to file grievances and lawsuits without being subjected to retaliatory transfers.  *Siggers-El*, 412 F.3d at 703-04.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion for summary judgment [R. 60] be **DENIED**.

Dated: June 24, 2015                             s/Elizabeth A. Stafford
Detroit, Michigan                                ELIZABETH A. STAFFORD
                                                 United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in

length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on June 24, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
